UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16-10216-PBS |
| | ) | |
| GLENN PEARSON | ) | |

**RESPONSE TO GOVERNMENT'S OPPOSITON TO DEFENDANT'S MOTION AND PETITION FOR COMPASSIONATE RELEASE AND PLACEMENT IN HOME CONFINEMENT**

The government opposes Mr. Pearson's *pro se* Motion for Compassionate Release, arguing that the requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court *See* Government's Opposition to Defendant's Motion and Petition for Compassionate Release and Placement in Home Confinement ("Gov. Opp.") at 3 citing *United States v. Raia* – F.3d – 2020 WL 1647922 at *2 (3d Cir. Apr. 2, 2020).

We ask the Court to incorporate for reference Mr. Pearson's pro se filing. Undersigned Counsel brings this amended filing to supplement the pro se filing, provide updated information, and to respond to the Government's Opposition. Undersigned counsel submits this reply in response to the Government's exhaustion arguments.[1] Put simply, in light of the extraordinary circumstances presented by the COVID-19 pandemic, the Court does have the authority to act on compassionate release motions prior to the 30-day exhaustion period and should do so in appropriate cases.

[1] Counsel is attempting to obtain medical records regarding Mr. Paulson to more fully address the merits of his compassionate release arguments.

Mr. Pearson is 64 years old. He suffers from diabetes, a heart condition and recently underwent bladder surgery. Mr. Pearson is currently detained at USP Canaan, a BOP facility with at least three acknowledged COVID-19 staff cases, and where there is minimal ability to take protective measures. This Court sentenced Mr. Pearson to 48 months in custody. His scheduled release date is July 27, 2021. Should the Court grant this motion, Mr. Pearson has a stable residence which he owns to return to with his wife, Paula Pearson.

Since Mr. Pearson's *pro se* filing, undersigned counsel submitted a request for Compassionate Release to the Warden at USP-Canaan on his behalf on April 15, 2020.[2]

We respectfully ask the Court to consider this motion on an expedited basis.

## I. COVID-19 Within USP-Canaan

We would note that while the Government's statement in their Opposition that no inmates have tested positive is accurate, per the BOP website, there are three staff members who have tested positive. In the context of this pandemic there is simply no difference between an inmate and a staff member. They are both human beings who are not able to practice the social distancing and sanitation measures recommended by the CDC. In fact, staff infection rates are in some ways more indicative of a spread of the virus as the staff move freely around various parts of the prison while inmates are kept in their particular units. Staff members also go home and out to the community, bringing significant risk to those inside. Further, at least one news outlet has reported a positive test for an inmate at USP Canaan, however that appears to be contradicted by the data on the BOP website.[3]

---

[2] Email to USP-Canaan, April 15, 2020.

[3] https://www.wnep.com/article/news/local/wayne-county/federal-prison-canaan-coronavirus/523-d0ec982d-b71b-4dfe-b6e7-b540ae364540

**II. The Raia Decision.**

*Raia* is the first decision by a circuit court addressing whether a district court has the authority to act on compassionate release motions prior to the 30-day exhaustion period specified in 18 U.S.C. § 3583(c)(1)(A).[4] However, as explained in an amicus brief filed by five former members of the judiciary within the Third Circuit, it did so without the benefit of full briefing on that issue. *See* Brief of Amici Curiae Former Members of the Judiciary In Support of Panel Rehearing and/or *En Ban*c Review, No. 20-1033 (3d Cir. filed Apr. 14, 2020), at 9-11.

Mr. Raia was sentenced to three months' imprisonment after being convicted by a jury of offenses involving allegations that he paid voters to vote for him in an election. The Government, which had sought a lengthier sentence, appealed to the Third Circuit. Shortly after reporting to the Federal correctional institution in Fairton, New Jersey to begin his sentence on March 3, 2020 Raia asked the Bureau of Prisons ("BOP") to move in the District Court for his compassionate release under 18 U.S.C. § 3582(c)(1)(A). However before BOP responded to his request, and before thirty days had passed, Raia filed his own motion with the District Court seeking compassionate release.

The District Court denied Raia's motion for compassionate release because the Government's pending appeal divested it of jurisdiction to decide Raia's motion. *See* Order, *United States v. Raia*, 18-cr-657 (Mar. 26, 2020) (ECF 86). Crucially however, before doing so the District Court issued an "indicative ruling," see Fed. R. Crim. P. 37, stating that it "would have granted the motion and released Raia to home confinement" due to, inter alia, the risks

[4] Numerous district courts have weighed in on both sides of this issue, and there is a growing body of law discussed in *Section _ infra*.

associated with COVID-19 and the non-violent nature of his offense. *Id*. The district court did not address the 30-day exhaustion issue.

Mr. Raia then filed a three page "letter motion" asking the Third Circuit to either dismiss his appeal without prejudice or, alternatively, rule on the motion for compassionate release. The Third Circuit held that it could not grant Raia's motion in the first instance on appeal, and that it could not dismiss the Government's appeal under Rule 3(a)(2). It noted that it could remand the case to the District Court while retaining jurisdiction over the government's appeal under Rule 12.1, but observed that "any remand would be futile" as "Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement." *Raia*, 2020 WL 1647922 at *2.

As *Amici* have observed, this decision was issued "without full briefing on the exhaustion issue or the benefit of a district court ruling [on the exhaustion issue]" and without consideration of the "ever-growing line of cases holding that the FSA's exhaustion requirement is not inflexible, and may be waived based on certain limited, equitable considerations." *See* Brief of *Amici Curiae* Former Members of the Judiciary In Support of Panel Rehearing and/or En Banc Review, *United States v. Raia*, No. 20-1033 (filed Apr. 14, 2020) (ECF 31), at 6-8 (arguing that the panel should "vacate that part of its opinion holding that it would be 'futile' to remand to the District Court under [FRAP 12.1] so the District Court may consider Raia's request in the first instance"). Of course, Raia is not binding on this court. *See, e.g., United States v. Atkinson*, 2020 WL 1904585 at *2 (D. Nev. Apr. 17, 2020) ("*Raia* is not binding on this court, and the court is unconvinced that it should follow the Third Circuit's precedent."). For the reasons stated above this Court should decline to follow it.

## III. The 30-day, pre-filing waiting period in § 3582(c)(1)(A) is a Nonjurisdictional Claims-Processing Rule that Is Excusable.

From its inception, the compassionate release statute empowered courts to reduce a previously-imposed sentence when "extraordinary and compelling reasons" warranted doing so. *See* 18 U.S.C. § 3582(c) (1984). Only the Bureau of Prisons ("BOP") could move a court for relief, however, and rarely did so. As explained further below, with the 2018 First Step Act, Congress amended the statute to allow courts to adjudicate motions filed by defendants themselves.

At issue here is whether one aspect of the new procedure—the lapse of 30 days following the defendant's request to the Warden for a recommendation that BOP file a motion requesting release—is subject to equitable exceptions. The answer to that question is "no" only if the provision is either jurisdictional or by its terms strips the courts of their traditional equitable authority. However here the text and history of Section 3582(c)(1)(A) reflect Congress's intent that courts exercise their historical role of weighing the equities and determining a sentence, without limitations controlled by the executive branch.

### A. The 30-Day Waiting Period in 18 U.S.C. § 3582(c)(1)(A) Is a Nonjurisdictional Claims-Processing Rule.[5]

[5] Although some US Attorney Offices have argued that § 3582(c)(1)(A) is jurisdictional, some have argued that it is a statutory claims-processing rule that the government can waive, but a court is not free to excuse. The government has waived the 30-day requirement in the following cases. *See., e.g., United States v. Gentill*e, 2020 WL 1814158 at *3 (S.D.N.Y. Apr. 9, 2020) ("The Court agrees with the government that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims processing rule that the Government can waive by failing to raise an exhaustion argument"); *see also* Letter Response, *United States v. Jasper,* No. 18-cr-390-18 (PAE) (ECF No. 440) (S.D.N.Y. Apr. 6, 2020 ("Although the defendant has not exhausted her administrative remedies pursuant to 18 U.S.C. 3582(c)(1)(A), based on the particular circumstances of this case, the Government has concluded that it is appropriate to waive the exhaustion requirement."). *See also United States v. Powell,* Case No. 1:94-cr-00316 (ESH), 2020 WL 1698194, at *1 (D.D.C. Mar. 28, 2020) (government did not oppose 55-year old asthma sufferer's motion for compassionate release, where he had 3 months left on 262-month sentence for violent crimes, including bank robbery).

The Supreme Court warns against reading statutory requirements as "jurisdictional" unless Congress clearly so provided: A rule qualifies as jurisdiction only if "Congress has clearly stated the rule is jurisdictional" and without such a statement, "courts should treat the restriction as nonjurisdictional in nature." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) quoting in part *Arbaugh v. Y&H Corp*., 546 U.S. 500, 514-15 (2006)). That is because deeming a requirement "jurisdictional" has "harsh consequences": Jurisdictional requirements cannot be waived or excused. *Arbaugh*, 546 U.S. at 514-15; *see also Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Thus the Supreme Court recognizes a separate category of nonjurisdictional "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times"—i.e., "claims-processing rules." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). They include, for example, time periods after which filing is disallowed (such as statutes of limitations), actions and waiting periods required before filing (such as exhaustion requirements), and filing formalities (such as verifications). Yet courts retain their full suite of equitable powers to excuse noncompliance with claims-processing rules—"even when," for example, "the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Wong*, at 409-10; see *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93-96 (1990). That is true whether the rule is statutory, *Wong*, 575 U.S. at 410 (Federal Tort Claims Act), or judge-made.

In *United States v. Manuel Alejandro Guzman Soto*, No. 18-10086-IT, 2020 WL 1905323 (D. Mass. Apr. 17, 2020) Judge Talwani ruled that the exhaustion language in Section 3582(c) did not create a jurisdictional bar to a court deciding a motion for compassionate release before

the conclusion of administrative remedies. Specifically, Judge Talwani noted that in *Casanova v. Dubois*, 289 F.3d 142 (1st Cir. 2002) the First Circuit found that absent "sweeping and direct language" administrative exhaustion requirements were nonjurisdictional. *Dubois*, 289 F.3d at 146. She held that, in light of this precedent, the lack of jurisdictional language answered the question:

> in keeping with the First Circuit's decision in *Casanova* and the Supreme Court's caution that courts must look for clear Congressional intent, the lack of jurisdictional language in § 3582(c)(1)(A) answers the jurisdictional question. *See Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007) ("[e]xhaustion of administrative remedies is a jurisdictional requirement only when Congress clearly ranks it as such."). Section 3582(c)(1)(A) sets forth claims processing rules but does not contain language that could be constituted as a jurisdictional bar.

*Guzman Soto*, 2020 WL 1905323 at *3. Judge Talwani also disapproved of the reasoning of *United States v. Lugo*, 2020 WL 1821010 (D. Me. Apr. 10, 2020). In *Lugo*, the court identified a circuit split as to whether the limitations of § 3582(c) were jurisdictional with the Fifth, Ninth, and Tenth Circuits finding the limitations of 3582(c) to be jurisdictional and the Seventh Circuit (in *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015)) finding the limitations of 3582(c) not to be jurisdictional. *Lugo*, 2020 WL 1821010 at *3. *Lugo* also pointed out that while "the First Circuit has not weighed in on the issue, in *United States v. Griffin*, 524 F.3d 71 (1st Cir. 2008) it quoted with seeming approval the Seventh Circuit's pre-*Taylor* statement that 'Section 3582(c) limits the substantive authority of the district court ... [and] is a real jurisdictional rule rather than a case-processing requirement.'" *Lugo*, 2020 WL 1821010 at *3 (citing *Griffin*, 524 F.3d at 84).

However, *Guzman-Soto* correctly pointed out that "none of these decisions deal specifically with 3582(c)(1)(A)'s exhaustion requirements." *Guzman-Soto*, 2020 WL 1905323 at *3. It also noted that "*Taylor* is persuasive in pointing out that [subsequent Supreme Court authority]" "had addressed the issue in terms of whether the defendant was statutorily eligible for

a sentence reduction, not whether the district court had subject matter jurisdiction to decide his motion." *Guzman-Soto*, 2020 WL 1905323 at *3. *See also Taylor* 778 F.3d at 670 (noting that "[w]hether a limit on a court's power is truly jurisdictional is ultimately up to Congress. In a series of cases over the last dozen years, the Supreme Court has taken new care to distinguish between truly (i.e., non-waivable) jurisdictional rules and ordinary case-processing rules that may be mandatory and even strict, but which a court need not raise on its own.").[6]

### B. The 30-Day Waiting Provision Can Be Equitably Excused.

#### 1. Statutory Claims-Processing Rules Are Subject to Equitable Exceptions.

As discussed by Judge Liman in *United States v. Russo*, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020), one key consequence of finding that a provision is a claims-processing rule rather than a jurisdictional requirement is that exhaustion can be waived as well as forfeited. *Russo*, 2020 1862294 at *5-6 (citing *Hammer v. Neighborhood Hous. Servs. of Chicago*, 138 S.Ct. 13, 17 (2017) for the proposition that claims processing rules "may be waived" and *Fort Bend Cty., Texas v. Davis*, 139 S.Ct. 1843, 1849 (2019) for the proposition that it may be forefeited). "While the Supreme Court has 'reserved whether mandatory claim processing rules

---

[6] *Taylor* noted that in *Freeman v. United States*, 131 S.Ct. 2685 (2011) the Supreme Court had considered the question of whether Section 3582(c)(2) was available to a defendant who had entered a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). It noted that all of the justices addressed the issue in terms of whether Freeman was statutorily eligible for a sentence reduction, not whether the district court had subject-matter *jurisdiction* to decide his motion. *Taylor*, 778 F.3d at 671. It also noted that "*Freeman* was decided after the Supreme Court's recent stream of cases that try to be more careful about which rules are truly jurisdictional . . . Accordingly, we do not view the silence about jurisdiction in *Freeman* as merely a 'drive-by' jurisdictional ruling entitled to little or no weight." *Id*. (internal citations omitted).

may be subject to equitable exceptions other than waiver and forfeiture [see, e.g, *Hammer* and *Davis*] . . . the weight of authority suggests that they are."[7] *Russo*, 2020 WL 1862294 at *6.

Courts lose their equitable authority to excuse noncompliance only when a statute or rule expressly deprives them of it. Thus the Supreme Court held, for example, that the express prohibition in Federal Rule of Appellate Procedure 26(b)(1)—an appellate court "may not extend the time to file . . . a petition for permission to appeal"—deprives courts of equitable authority to extend that time. *Nutraceutical Corp. v. Lambert*, 139 S.Ct. 710, 715 (2019). Similarly, Federal Rule of Criminal Procedure 45(b)(2)'s prohibition on extending the time to take action under Rule 29 or 33 (unless the Rule expressly authorizes the extension) deprives courts of equitable authority to do so. *Carlisle v. United States*, 517 U.S. 416, 421-27 (1996). *Compare Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (language and purpose of PLRA make statutory exhaustion requirement exclusive and absolute), with *Wong*, 575 U.S. at 420 (court may equitably toll statute of limitations absent "affirmative indication from Congress" of intent to preclude that; strong prohibitory language of statute did not curtail court's equitable authority). The Supreme Court has even left open the possibility that a court's equitable authority survives an express statement that otherwise appears to make the claims-processing rule "mandatory." "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). However, "where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id*.

**2. The Text and History of Section 3582(c)(1)(A) Support Interpreting the 30-Day Waiting Provision as a Claims Processing Rule Subject to Equitable Exceptions.**

---

[7] *Davis*, 139 S.Ct. at 1849 n.5 (2019) ("the Court has reserved whether mandatory claim-processing rules may [ever] be subject to equitable exceptions" citing *Hamer v. Neighborhood Housing Servs. of Chicago*, 138 S.Ct. 13, 18 n.3 (2017)).

Federal courts are divided on the issue of whether a court has authority to excuse compliance with 30-day exhaustion requirement in 18 U.S.C. 3582(c). *See., e.g.*, *United States v. Smith*, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) (observing that courts are divided on the issue); *United States v. Haney*, 2020 WL 1821988 at *1 (S.D.N.Y. Apr. 13, 2020) (observing that federal courts even within the Southern District of New York were divided on the issue). Some courts, including within the First Circuit, have found the 30-day waiting period to be mandatory. *United States v. Muniz*, No. 16-cr-10170-MLW, 2020 WL 1898914 (D. Mass. Apr. 16, 2020) (holding statutory exhaustion provision is mandatory, citing *United States v. Lugo*, discussed above, and Prison Litigation Reform Act case *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016) for the proposition that "where a statutory exhaustion provision is mandatory, it 'foreclose[s] judicial discretion"); *United States v. Miamen*, 2020 WL 1904490 (D.R.I. Apr. 17, 2020); *United States v. Nival*, 17 cr-10142-DJC (Apr. 23, 2020) (ECF No. 489) (minute order) (citing *Raia*, *Lugo* and *United States v. Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020)).[8] Other courts, including some within this district, have excused the requirement. *See Guzman-Soto*, *supra*; *See also United States v. Ramirez*, 17-cr-10328-WGY-1 (Apr. 20, 2020) (ECF No. 115) ("The Court concludes it is here appropriate to waive the 30 day exhaustion requirement."); *United States v. Capelton*, 00-cr-30027-MGM-4 (D. Mass. Apr. 10, 2020) (ECF No. 538) ("Under these extraordinary circumstances, and in light of Defendant's short remaining time left before his release, his age, and the conditions at MDC-Brooklyn, the court finds it has authority to grant the relief requested under 18 U.S.C. § 3583(c)(1)(A)(i) . . . Moreover, while the court

---

[8] In *United States v. Khawaja*, 2020 WL 1940848 at *3 (D.N.H. Apr. 22, 2020) the Court declined to reach the issue, holding that "even assuming defendant is correct that the court can waive the exhaustion requirement under certain circumstances, the court finds that this case does not present circumstances warranting such a waiver.")

recognizes there is a split in the case law as to whether it can waive the administrative exhaustion requirement, the court is persuaded by the cases holding that it can, especially under these circumstances when Defendant has less than 30 days of incarceration remaining.”).

Although there is a division, a substantial number of cases have concluded that in light of the First Step Act’s text, history, and purpose the exhaustion requirement – despite the fact that it is statutory – it is not absolute. *See, e.g., Guzman-Soto*, 2020 WL 1905323 at *5 (examining text and purpose of the statute, and concluding that “nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.”); *United States v. Hane*y, 2020 WL 1821988 at *3-4 (S.D.N.Y. Apr. 13, 2020) (noting that text allows a defendant to come to court before the agency has made a final decision, and thus reflects Congressional intent for the defendant to have a meaningful and prompt judicial determination of whether he should be released); *United States v. Scparta*, 2020 WL 1910481 at *8 (S.D.N.Y. Apr. 20, 2020) (examining the First Step Act’s text, history, and structure and concluding they “all counsel in favor of concluding that the statute’s exhaustion requirement is amenable to equitable exceptions.”); *United States v. Russo*, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020) (same); *United States v. Sanchez*, 2020 WL 1933815 at *4 (D. Conn. Apr. 22, 2020) (observing that “the context of this particular exhaustion requirement suggests that Congress also intended to promote ‘meaningful and prompt judicial review’ even at the cost of the Bureau’s authority” and holding Court had discretion to waive 30-day waiting period where strict enforcement would not serve that Congressional objective); *United States v. Atwi*, 2020 WL

1910152 at * 3-4 (E.D. Mich. Apr. 20, 2020) (adopting the analysis in *Haney* and concluding Atwi may proceed without waiting 30 days or for the BOP's response).[9]

Examining the statutory framework confirms that the 30-day provision is a mere claims-processing rule that is subject to the courts' control. The pertinent provision reads:

> The court may not modify a term of imprisonment . . . except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after [exhausting administrative appeal rights] . . . or the lapse of 30 days from the receipt of such a request [that BOP file a motion] by the warden of the defendant's facility, whichever is earlier . . . if [the Court] finds that extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

This text accomplishes two things: first, it empowers the court to reduce a sentence if it finds that "extraordinary and compelling reasons" "warrant" doing so in light of sentencing law and policy. Second, it empowers the court to grant relief on the inmate's own motion—so long as BOP had a period of time (that is, 30 days) to decide whether to move the court for the same relief.

This is not language of prohibition; it is language of authorization. It contrasts starkly with the provision at issue in *Wong*, which stated "emphatic[ally]" that untimely claims "shall be forever barred"—yet remained amenable to equitable tolling at the court's discretion. 575 U.S. at 411, 419-20. So too does the First Step Act preserve the courts' equitable discretion.

---

[9] In addition, a number of other courts excused exhaustion relying on the statement in *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *See, e.g., United States v. Perez*, 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Zuckerman*, 2020 WL 1659880 at *2-3 (S.D.N.Y. Apr. 3, 2020); *United States v. McCarthy*, 2020 WL 1698732 at *3-4 (D. Conn. Apr. 8, 2020); *Samy v. United States*, 2020 WL 1888842 at *2 (E.D. Mich. Apr. 16, 2020); *United States v. Minor*, 18-cr-80152, at 3 (S.D. Fla. Apr. 17, 2020) (ECF No. 35).

Moreover, considering the purposes and policies underlying the limitation provision and the act itself, confirms this conclusion: When it created an option to reduce otherwise final and determinate sentences more than 30 years ago, Congress gave the courts ultimate authority to determine release eligibility—which is, after all, authority to determine the sentence. But the courts' ability to exercise that authority was originally constrained by the requirement that they await a BOP motion (and thus, executive consent). *See* 18 U.S.C. § 3582(c) (1984). BOP rarely agreed to file such motions, leaving inmates no statutory recourse and courts unable to act. Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (from 2006-2011, annual average of 24 inmates released on BOP motion).

Against that backdrop, Congress amended Section 3582(c)(1)(A) to allow courts to act on an inmate's own motion. The goal was to expand access to compassionate release—a goal accomplished by eliminating BOP's exclusive control over when judges get to judge whether release is warranted. *See* 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Senator Cardin, co-sponsor of First Step Act) ("[T]he bill expands compassionate release . . . and expedites compassionate release applications.").

Congress did not remove BOP from the process entirely, however. The 30-day waiting period gives BOP a chance to decide whether to support an inmate's request for release and, in any case, to offer input. But it is part of a statute that honors the courts' traditional authority to act on a party's request for relief, freeing them from awaiting an executive branch "go-ahead." Plainly Congress did not intend to bar courts from acting more quickly when exigencies require. Its goal was to reduce BOP's control over when and whether judges may judge. *See Berryhill*, 139 S.Ct. at 1774 (courts may excuse administrative exhaustion where "Congress wanted more

oversight [of agency] by the courts”). The conclusion that Congress intended the 30-day provision to rigidly constrain courts’ ability to adjudicate compassionate release motions, when the Act expanded courts’ ability to do so, “pervert[s] congressional intent.” *Russo*, 2020 WL 1862294, at *6. As explained by *Russo*, “Section 3582(c) is a distinctive federal statute, unlike those in the cases cited by the Government. It does not reflect unqualified commitment to administrative exhaustion and it does reflect acknowledgement that the judiciary has an independent interest in, and responsibility for, the criminal judgments it is charged with imposing. It has features of an administrative exhaustion requirement and of a timeliness statute. As previously explained by the Court, the plain language of Section 3582(c) evinces congressional intent that a defendant has a right to a prompt and meaningful judicial determination of whether she should be compassionately released, regardless of whether administrative remedies have been exhausted.” *Id.*

Moreover, holding that courts lack even the option of excusing noncompliance with the 30-day period would further neither of the “twin purposes” of administrative exhaustion: promoting judicial efficiency and protecting administrative authority. *McCarthy v. Madigan*, 503 U.S. 140, 145-46 (1992). The “judicial efficiency” rationale applies when an agency may relieve pressure on the courts by itself granting the relief sought. *Id*. at 148-49. But here, BOP lacks—and has never had—the ability to grant release; it merely decides whether to support a request that a court must adjudicate. *Haney*, 2020 WL 1821988, at *3 (“§ 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense [in that it] does not necessarily require the moving defendant to fully litigate his claim before the agency.”); *see McCarthy*, 503 U.S. at 156 (Rehnquist, J. concurring) (where BOP administrative process cannot furnish remedy prisoners seek, it is “therefore improper to impose an exhaustion requirement”).

Nor would prohibiting courts from acting more quickly advance proper deference to agency authority. To the contrary: the courts, not BOP (part of the Department of Justice), have "authority" over criminal sentencing. In fact, courts are "in a unique position to determine whether the circumstances warrant a reduction" in sentence. U.S.S.G. § 1B1.13 (commentary). The First Step Act restores the correct balance of authority between the judiciary and the executive branch in the sentencing context: while the executive branch should have a chance to weigh in, the court is always empowered to do justice when "extraordinary and compelling reasons" warrant—including by excusing full compliance, in exigent circumstances, with the statutory waiting period.

For the foregoing reasons, this Court should find that the 30-day exhaustion requirement may be excused in the appropriate circumstances.

Respectfully submitted,

GLENN PEARSON
By His Attorney,

*<u>/s/ Jessica Thrall</u>*
Jessica Thrall, #670412
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street
5th Floor
Boston, MA 02210
617-223-8061

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 24, 2020.

*/s/ Jessica Thrall*
Jessica Thrall