IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No: 16 CR 10216-PBS |
| | ) | |
| , | ) | |
| GLENN PAUL PEARSON | ) | |
| Defendant. | ) | |

**United States' Response to Defendant's Supplemental Filing**

Defendant seeks to be released from prison under the compassionate release provision in 18 U.S.C. § 3582 based on his medical condition, as a risk factor for contracting the coronavirus within prison. His request should be rejected. The Bureau of Prisons ("BOP") reviewed his inmate file and determined that Mr. Pearson is not a candidate for home confinement placement at this time. *See*, Exhibit One, BOP Declaration, J. Kerr (Attached).

The BOP is actively working on containing the spread of the convers within prisons. Indeed, there are no coronavirus cases among the inmate population at USP Canaan where Mr. Pearson presently resides. Id. At ¶ 30. BOP has taken many steps to protect inmates, including in Mr. Pearson's case, a daily temperature check. Among the other steps BOP has implemented to protect the inmate population are: limited access to prisons, restricted prisoner movements within prisons, social distancing, screening and testing, use of quarantines as necessary, education programs for inmates and staff on preventing the spread of disease, providing masks and hand cleaners, separating ill inmates, and—in appropriate cases—releasing inmates for home confinement under 18 U.S.C. § 3624(c)(2), as amended by § 12003(b)(2) of the CARES Act.[1](Id.

---

[1] Before the CARES Act was passed, § 3624(c)(2) provided the BOP with the exclusive authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."

1

at t¶ ¶ 21-27.  Indeed, since March 26, 2020 BOP has placed an additional 2,471 inmates on home confinement, an increase of 87.5%. Id. at ¶ 16.[2]

BOP's analysis for release of inmates to home confinement includes evaluation of a range of quickly changing facts and circumstances, including the following:

- *Safety of place of home detention.* An inmate's proposed residence after release from prison should be a place where no person is infected or soon to be infected.

- *Avoiding recidivism.*  The conditions and place where a defendant will stay after release must limit the risk of recidivism—an important consideration given that federal inmates have a re-arrest rate that ranges from 30.2% for inmates with no criminal history points to 85.7% for inmates with 15 or more criminal history points.[3]  New arrests not only endanger the public and return an inmate to prison, but also increase the dangers to arresting officers and supervising probation officers.

- *Protecting the public from infection.*  Any release should include measures to assure that an inmate who is presently incarcerated is not infected by the time that the Court ordered any release, undermining the benefits of the release;

- *Avoiding misallocation of testing resources.* Any request by an inmate should appropriately triage the use of available testing by medical need

---

This provision is in keeping with BOP's authority to designate where an inmate serves a sentence.  Congress has now, temporarily, expanded § 3624(c)(2), while leaving its application to BOP.  As part of the CARES Act, Congress sought to address the spread of the coronavirus in prison by permitting BOP to expand the use home confinement under § 3624(c)(2).  Section 12003(b)(2) suspends, during the emergency of the coronavirus pandemic, the limitation in § 3624(c)(2) that restricts home confinement to the shorter of 10 percent of the inmate's sentence or 6 months, once the Attorney General makes requisite finding that emergency conditions will materially affect the function of BOP.   The Attorney General made those findings on April 3, 2020, conferring on BOP the authority to expand its use of home confinement.

[2] See https://www.bop.gov/coronavirus/index.jsp
[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf#page=12

- *Addressing the need for food, housing, medical care, transportation, employment, and other necessities.* Any release order should evaluate whether a released inmate could find—during a pandemic—food, medical care, housing, safe (often interstate) transportation needed to relocate from prison to the inmate's home, and employment during a time when an extraordinarily large number of people are losing their jobs.

- *Evaluating how much of a difference a defendant's proposal would make to disease transmission inside defendant's prison.* Before a defendant receives the benefit of being released from prison, a court should determine the extent to which releasing a particular inmate makes a difference to disease transmission in the BOP facility. *See* https://www.bop.gov/coronavirus/;

- *Assessing how much release would affect the particular inmate's health.* To justify cutting short an inmate's sentence, a defendant's release should make a sufficiently great improvement to the odds of maintaining an inmate's health.

- *Making release decisions fast enough and accurately enough to make a difference.* An inmate's release request requires a court to determine accurately, with appropriate records, how great a danger the inmate poses to the public and make that determination on a time scale needed to respond to disease transmission within a prison.

- *Appropriately prioritizing supervision resources.* The Probation Office's resources to supervise released inmates are necessarily limited, and any inmate's release should be assessed against the comparative advantages that another inmate might receive from those same supervisory resources.

This list is not exhaustive and, indeed, could include many additional considerations. The point is that the factors cited above illustrate a general truth—that in this quickly changing landscape, BOP is in the best position to assess the appropriateness of individual defendant's circumstances, risks and release plans.

While it is certainly true that BOP—like nearly every community— is affected by the spread of the coronavirus, it does not follow that inmates are necessarily at greater risk than members of the general public.  As to Mr. Pearson's request, presently, there are **no** COVID-19 cases at the USP Canaan main institution or adjacent satellite camp. According to BOP: "[t]he BOP website lists "1" current staff case, however, the staff member's case resolved, and they were not and are not assigned to the adjacent satellite camp, where Pearson is." Id. at ¶ 30.  In sharp contrast, Mr. Pearson proposes returning to the town of Whitman, Plymouth County Massachusetts. 164 cases of COVID-19 were identified in Whitman as of May 14, 2020.[4]  And as of May 13, 2020, Plymouth County reported 6,592 cases of the virus. Id.  In light of these facts, it does not follow that Mr. Pearson is at greater risk completing his prison sentence at USP Canaan, which is COVID free, than being released to his community in Plymouth County where there are substantial number of reported cases with infections continuing to increase. [5]  *See, e.g.*, *United States v. Feiling*, 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) ("More importantly, even if COVID-19 cases eventually emerge at FCI Loretto, Defendant fails to establish how his release on home confinement presents a viable alternative sentence. Indeed, Defendant's release on home confinement presents its own risks to Defendant's health, the health of his family and public safety.").

---

[4] Https:boston.CBSlocal.com/2020/05/13/coronavirus-cases-massachusetts-town-city-numbers, last visited May 13, 2020.
[5] Https:boston.CBSlocal.com/2020/05/13/coronavirus-cases-massachusetts-town-city-numbers, last visited May 13, 2020. See attached charts.

There does not appear to be any evidence of extraordinary or compelling circumstances contained in the BOP medical records. According to the medical records, Mr. Pearson, aged 64, suffers from complaints consistent with early years as a senior citizen. Since 2018, Mr. Pearson was treated for and diagnosed with the following infirmities: hypertension, cardiac arrhythmia, gingivitis, dermatitis, low back pain, urinary tract infection, bladder stones, and hematuria. He recovered from surgery in June 2019 which successfully removed bladder stones.[6] According to the medical records, Mr. Pearson was found eligible to continue to work at the camp. He was also approved to relocate to a lower bunk. It does not appear that Mr. Pearson falls within the CDC Risk Factors.[7]

It also appears that BOP determined that Pearson is not a candidate for home confinement due to pending state charges against Mr. Pearson in the Cape and Islands District Attorney's Office. *See,* Exhibit One ¶ 3, footnote 1.

Ultimately, it is the defendant's burden to prove that he is entitled to compassionate release under § 3582(c)(1)(A)(i). *See White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019); *see generally Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) ("Absent some reason to believe that Congress intended otherwise, . . . the burden of persuasion lies where it usually falls, upon the party seeking relief.").

Courts have properly concluded that a risk of being infected by the coronavirus fails by itself to justify compassionate release. [I]n the context of the COVID-19 outbreak, courts have

---

[6] The BOP medical records were provided to counsel on May 13, 2020 and forwarded to probation on May 14, 2020.
[7] Risk factors include: 65 years or older, chronic lung disease or moderate to severe asthma, serious heart conditions, Immunocompromised (including cancer treatment, smoking, bone marrow or organ transplant, immune deficiencies, poorly controlled HIV or AIDS, prolonged use of corticosteroids or other immune weakening medications), severe obesity (BMI of 40 or higher), diabetes, chronic kidney disease that requires dialysis, and liver disease. See htttps://www.cdc.gov/coronavirus/2019-ncov/need-estra-precautions/people-at-higher-risk.

found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, No. 2:07CR150, 2020 WL 1906845, at *1 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, No. 3:19CR112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)).  In light of the lack of COVID 19 at his facility, there does not appear to be an extraordinary or compelling reason presented to warrant compassionate release of Mr. Pearson at this time.

Finally, if this Court disagrees with the BOP position, any order that this Court issues that grants a defendant compassionate release should require defendant to undergo a 14-day quarantine that BOP controls before any release to home confinement in Plymouth County.

## CONCLUSION

In light of the lack of COVID-19 at USP Canaan where Mr. Pearson resides, there is no indication that he has a particularized risk of contracting the virus by completing his prison sentence.  This is particularly true in light of the volume of virus in the community to which Mr. Pearson seeks to be released.  There does not appear to be an extraordinary or compelling reason presented to warrant compassionate release of Mr. Pearson at this time.

    Respectfully submitted,

    ANDREW E. LELLING
    United States Attorney

Dated: May 13, 2020

    By:    /s/ Karen Kelly
            _____
            Karen Kelly
            Chief, SCES
            Tax Division

CERTIFICATE OF SERVICE

I, Karen Kelly, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: May 13, 2020                          /s/ Karen Kelly
                                             --------------------------------
                                             Karen Kelly
                                             Chief, SCES, Tax Division